**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EVERETT DOLLAR,            :            Civil No. 05-5594 (RBK)

                 :

        Petitioner,       :

                 :

        v.             :            **OPINION**

                 :

GRACE ROGERS, et al.,      :

                 :

        Respondents.    :

_____:

**APPEARANCES:**

        EVERETT DOLLAR, #0075
        Special Treatment Unit
        P.O. Box 699
        Kearny, New Jersey  07032
        Petitioner Pro Se

        ATTORNEY GENERAL OF NEW JERSEY
        DAVID L. DACOSTA, DEPUTY ATTORNEY GENERAL
        P.O. Box 112
        Trenton, New Jersey  08625
        Attorneys for Respondents

**KUGLER**, District Judge

      Everett Dollar filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging orders civilly committing him as a sexually violent predator issued on May 10, 2000, and March 16, 2001, by the Superior Court of New Jersey, Law Division.  On May 31, 2006, Respondents filed an Answer, together with a Legal Argument and certain documents, seeking dismissal of the Petition.  On June 15, 2006, Petitioner filed a Reply to the Answer.  On December 19, 2006, this Court ordered Respondents to file a supplemental answer, together with

additional documents from the state court record, and permitted Petitioner to file a supplemental

reply.  On January 22, 2007, Respondents filed a Supplemental Answer, seeking dismissal of the

Petition, together with additional documents from the state court record.  On April 23, 2007,

Petitioner filed a Supplemental Reply.  For the reasons expressed below, this Court will dismiss

the Petition and deny a certificate of appealability.

## I.  BACKGROUND

Everett Dollar challenges orders of temporary civil commitment issued on May 10, 2000,

and March 16, 2001, by the Law Division of the Superior Court of New Jersey, pursuant to the

Sexually Violent Predator Act ("SVPA"), N.J. STAT. ANN. § 30:4-27.24, et seq.[1]  On June 6,

1997, the Law Division of the Superior Court of New Jersey sentenced Petitioner to a term of

five years imprisonment pursuant to a plea of guilty to one count of third degree aggravated

assault.  Petitioner's sentence was scheduled to expire on May 16, 2000.  On May 10, 2000,

without notice to Petitioner, the Attorney General of New Jersey filed a petition in the Superior

Court of New Jersey, Law Division, Cumberland County, seeking a temporary order for

Petitioner's civil commitment as a sexually violent predator.  The petition was based on

Petitioner's imminent release from prison on May 16, 2000; his conviction on October 20, 1994,

for criminal sexual contact and criminal mischief; his conviction on June 6, 1978, for assault

with intent to rape; and two criminal certificates in which Doctors Carlo J. Baril, M.D., and

Benjamin Liberatore, M.D., averred that Petitioner suffers from a mental abnormality or

personality disorder that makes him likely to engage in acts of sexual violence if not confined to

---

[1] The SVPA, enacted in 1998 and effective August 12, 1999, permits the involuntary civil commitment of a "sexually violent predator" to a separate and secure facility for control, care and treatment.  N.J. STAT. ANN. § 30:4-27.24, et seq.

a secure facility for control, care and treatment.  On May 10, 2000, without giving Petitioner

notice or opportunity to be heard, the Superior Court of New Jersey ordered Petitioner's

temporary civil commitment as a sexually violent predator, appointed the Public Defender to

represent Petitioner, and directed the Attorney General to serve Petitioner with the petition and

supporting documents and notify him that an evidentiary hearing was scheduled for May 25,

2000.  After conducting an evidentiary hearing on February 6 and 7, 2001, the Law Division

entered an order on March 16, 2001, civilly committing Petitioner to a secure facility designated

for the custody, care and treatment of sexually violent predators, until further order, and

scheduled a commitment review hearing for February 6, 2002.

Petitioner appealed the commitment orders entered on May 10, 2000, and March 16,

2001, to the Superior Court, Appellate Division.  See In re commitment of E.D., Docket Nos. A-

3536-00Te, A-3742-00T3, A-4229-01T3 slip op., pp. 1-2 (N.J. Super., App. Div., Aug. 2, 2002).

Before the Appellate Division ruled on his appeal, the Law Division had conducted a second

commitment hearing, and on April 25, 2002, the Law Division ordered Petitioner's unconditional

release.  Id.  The Law Division determined that the Attorney General failed to prove by clear and

convincing evidence that Petitioner was a sexually violent predator in need of involuntary civil

commitment and that the court did not have the authority to order a conditional discharge, unless

recommended by the treatment staff.  Id.  The Attorney General appealed the unconditional

release order, and on April 24, 2002, the Appellate Division granted the state's motion for a stay

pending appeal and consolidated the appeals.[2]

---

[2] On the merits, the Attorney General argued that the Law Division erred in concluding
that Petitioner was not a sexually violent predator and abused its discretion in failing to impose

(continued...)

In an opinion filed August 2, 2002, the Appellate Division affirmed the commitment order, affirmed the order finding that Petitioner was no longer a sexually violent predator, and remanded the issue of conditions, holding that the court has inherent power to conditionally discharge a person who has been committed under the SVPA.  Id. at pp. 2, 46, 53.  On remand, by order filed September 13, 2002, the Law Division ordered Petitioner to be discharged with seven conditions, directed that the court shall be immediately notified of any violation of the conditions and may order his immediate return to the Special Treatment Unit pending review of any reported violation, and stayed the conditional discharge until 5:00 p.m. on September 20, 2002.  The Attorney General filed a notice of appeal, but withdrew the appeal on October 3, 2002.  Petitioner was released on December 4, 2002.  See In re commitment of E.D., Docket No. SVP No. 75 transcript, p. 127 (N.J. Super., Law Div., March 31, 2003).

On February 10, 2003, the Law Division entered an order for the arrest of Petitioner based on the Attorney General's ex parte representation to a Superior Court judge by telephone that Petitioner had violated the conditional discharge order filed December 2, 2002, by leaving the Rescue Mission without permission.[3]  See In re commitment of E.D., Docket No. SVP No. 75 transcript, p. 127 (N.J. Super., Law Div., March 31, 2003).  Petitioner was returned to the Special Treatment unit on February 10, 2003.  See In re commitment of E.D., 183 N.J. 536, 542 (2005).  After conducting an evidentiary hearing, on March 31, 2003, the Law Division determined that

---

[2](...continued)
conditions on Petitioner's discharge.  In re commitment of E.D., slip op. at p. 23.

[3] The record filed by Respondents does not include orders filed December 2, 2002, and February 10, 2003, which are referred to in the transcript of the hearing on the revocation of Petitioner's conditional discharge.

Petitioner continued to be a sexually violent predator and committed him.  Petitioner appealed, and on May 14, 2004, the Appellate Division affirmed the order recommitting Petitioner as a sexually violent predator.  See In re commitment of E.D., Docket No. A-3976-02T2 slip op. (N.J. Super., App. Div., May 14, 2004).

Petitioner filed a petition for certification from this Appellate Division ruling, and on June 15, 2005, the New Jersey Supreme Court reversed and remanded.  See In re commitment of E.D., 183 N.J. 536 (2005).  The New Jersey Supreme Court held that, when the Attorney General seeks to revoke a conditional discharge and recommit a person as a sexually violent predator, "due process requires the State to give the committee written notice of each asserted violation," id. at 540, and that the standard of proof and burden of meeting it are identical to the initial proceeding to commit.  Id. at 551.  "Thus, in order for the State to cause the recommitment of a committee who has been conditionally discharged, the State must establish by clear and convincing evidence that the committee is highly likely not to control his or her sexually violent behavior and will reoffend."  Id.  Although the trial court found that Petitioner continued to be a sexually violent predator, the New Jersey Supreme Court remanded because the trial court failed to set forth that the court's findings were based on the clear and convincing evidence standard. Id. at 552.  After hearing additional testimony, by order filed September 30, 2005, the Law Division civilly committed Petitioner as a sexually violent predator until further order.  Petitioner appealed, and the appeal is evidently pending before the Appellate Division.

Petitioner executed the Petition before this Court on November 16, 2005.  The Clerk received it on November 21, 2005.  The Petition raises six grounds:

Ground One:  PETITIONER'S CONFINEMENT WAS OBTAINED BY VIOLATION OF RES JUDICATA, AND COLLATERAL ESTOPPEL CONTRARY TO FEDERAL AND STATE PROHIBITION TO DUE PROCESS AND FUNDAMENTAL FAIRNESS.  U.S.C.A. FOURTEENTH.

Ground Two:  PETITIONER'S CONFINEMENT WAS OBTAINED BY THE INVOLUNTARY TRANSFER TO A MENTAL HEALTH FACILITY WITHOUT THE OPPORTUNITY OR BENEFIT OF A NOTICE AND HEARING WAS IN VIOLATION TO DUE PROCESS, AND FUNDAMENTAL FAIRNESS, GUARANTEED BY BOTH THE FEDERAL AND STATE CONSTITUTION, U.S.C.A. FOURTEENTH AMENDMENT.

Ground Three:  PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION BOTH THE FEDERAL AND STATE CONSTITUTION, U.S.C.A. SIXTH, FOURTEENTH AMENDMENTS.

Ground Four:  DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, BECAUSE, TRIAL COUNSEL'S INEFFECTIVE REPRESENTATION AT TRIAL WAS IN DIRECT CONFLICT WITH HER ABILITY TO REPRESENT HIM ON APPEAL AND ON CERTIFICATION TO THE NEW JERSEY SUPREME COURT.

Ground Five:  THE PETITIONER CONFINEMENT WAS DUE TO A VIOLATION OF THE EX POST FACTO, AND DOUBLE JEOPARDY CLAUSE OF THE FOURTEENTH AMENDMENT OF U.S. CONSTITUTION.

Ground Six:  THE NEW JERSEY SUPREME COURT'S DECISION TO REVERSE AND REMAND LOWER COURTS REVOCATION OF PETITIONER'S CONDITION RELEASE SHOULD NOT RENDER HIS CLAIMS THAT HIS CIVIL COMMITMENT WAS UNCONSTITUTIONAL.

(Pet. ¶¶ 12.a. - 12.f.)

This Court ordered Respondents to file an answer and copy of the state court record.  On

May 31, 2006, Respondents filed an Answer, together with a Legal Argument and certain

documents, seeking dismissal of the Petition as moot, unexhausted, and on the merits.  On June

15, 2006, Petitioner filed a Reply to the Answer.  On December 19, 2006, this Court ordered

Respondents to file a supplemental answer, together with additional documents from the state

court record, and permitted Petitioner to file a supplemental reply.  On January 22, 2007,

Respondents filed a Supplemental Answer, seeking dismissal of the Petition.  On April 23, 2007,

Petitioner filed a Supplemental Reply.

## II.  DISCUSSION

A.  Exhaustion

This Court may not consider the merits of the grounds raised in the Petition under § 2254

without first addressing Respondents' arguments that those grounds are unexhausted or, if

exhausted, procedurally barred.  See House v. Bell, 126 S. Ct. 2064, 2068 (2006); Edwards v.

Carpenter, 529 U.S. 446, 451 (2000).

A district court may not grant a writ of habeas corpus under § 2254 unless the petitioner

has exhausted State court remedies for all grounds presented in the petition or such process is

unavailable or ineffective to protect the petitioner's rights.  See 28 U.S.C. § 2254(b)(1)(A),

(b)(1)(B); Rhines v. Weber, 544 U.S. 269, 273-75 (2005); Lambert v. Blackwell, 134 F.3d 506,

513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001)  Specifically, § 2254 provides in relevant

part:

>An application for a writ of habeas corpus on behalf of a person in
>custody pursuant to the judgment of a State court shall not be
>granted unless it appears that -
>
>(A) the applicant has exhausted the remedies available in the courts
>of the State; or

(B)(i) "there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998); Lambert, 134 F.3d at 513; Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993). Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The exhaustion doctrine requires a petitioner to fairly present each federal claim to each level of the state court system.  See Baldwin v. Reese, 541 U.S. 27 (2004); O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Rose v. Lundy, 455 U.S. 509, 515 (1982); U.S. ex rel. Kennedy v. Tyler, 269 U.S. 13, 17 (1925); Burkett v. Love, 89 F.3d 135, 138 (3d Cir. 1996).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court.  O'Sullivan, 526 U.S. at 845; see also Baldwin, 541 U.S. at 29.  Thus, the Supreme Court "held in Rose v. Lundy, 455 U.S. 509 . . . (1982), that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  Rhines, 544 U.S. at 273. In Rose v. Lundy, the Supreme Court imposed "a requirement of 'total exhaustion' and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the

first instance." Rhines, 544 U.S. at 274.  To satisfy the total exhaustion requirement, a petitioner

in the custody of the State of New Jersey must present each federal claim to the Superior Court of

New Jersey, Law and Appellate Divisions, and to the New Jersey Supreme Court.  See Toulson,

987 F.2d at 987-89.

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal

substance to the state courts in a manner that puts them on notice that a federal claim is being

asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999), and must "provide the state

courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his

constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982) (citation and internal quotation

marks omitted).  The habeas petitioner carries the burden of proving total exhaustion.  Lambert,

134 F.3d at 513; Toulson, 987 F.2d at 987.

In this case, none of the claims raised in the Petition are exhausted.  Petitioner challenges

the civil commitment orders of May 10, 2000, and March 16, 2001.  Petitioner appealed these

commitment orders to the Appellate Division, raising the following five grounds:

> 1.  THE PRIOR DETERMINATION THAT E.D. IS NOT A
> COMPULSIVE SEX OFFENDER COLLATERALLY ESTOPS
> THE STATE FROM COMMITTING HIM AS UNDER THE
> SVPA.
>
> 2.  CONSIDERING THAT THE STATE NEVER PROVIDED
> E.D. WITH TREATMENT DURING THE YEARS HE WAS
> INCARCERATED, IT IS FUNDAMENTALLY UNFAIR FOR
> THE STATE TO NOW CIVILLY COMMIT E.D. BASED ON
> THE ASSERTION THAT HE IS IN NEED OF SUCH
> TREATMENT.
>
> 3.  THE EVIDENCE PRESENTED AT THE COMMITMENT
> HEARING DID NOT SUPPORT A FINDING THAT E.D. IS A
> SEXUALLY VIOLENT PREDATOR.

> 4.  THE HEARING COURT'S CONSTRUCTION OF THE SVPA
> LANGUAGE "LIKELY TO ENGAGE IN ACTS OF SEXUAL
> VIOLENCE" WAS TOO BROAD.
>
> 5.  THE OFFICE OF THE PUBLIC DEFENDER SHOULD NOT
> BE RESPONSIBLE FOR THE COST OF THE TRANSCRIPTS
> ORDERED FOR ALL INDIGENT APPEALS FROM SVPA
> ORDERS.

In re commitment of E.D., Docket Nos. A-3536-00T3, A-3742-00T3, A-4229-01T3 slip op., pp.

22-23 (N.J. Super., App. Div., Aug. 2, 2002).

Clearly, only Ground One in the instant § 2254 Petition (violation of due process based

on res judicata and collateral estoppel) was presented to the Appellate Division on appeal from

the challenged orders of civil commitment.  Thus, Grounds Two, Three, Four and Five were not

presented to the Appellate Division, and are not exhausted.[4]  Although Ground One was

presented to the Appellate Division, the claim is not exhausted because Petitioner did not file a

petition for certification of the Appellate Division decision and the claim was therefore not

presented to the New Jersey Supreme Court.  Accordingly, none of the grounds presented in the §

2254 Petition have been exhausted before all three levels of the New Jersey courts.

Under these circumstances, this Court must consider whether exhaustion is excused

because there is an absence of available state corrective process, pursuant to 28 U.S.C. §

2254(b)(1)(B)(i).[5]  If exhaustion is excused because further state process is unavailable, then this

---

[4] Petitioner argues in Ground Six that Grounds One through Five are not moot.  Thus, Ground Six does not present an independent federal claim.

[5] Failure to exhaust may also be excused where "circumstances exist that render [State corrective] process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(ii).  State corrective process is ineffective where "'state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised, or where exhaustion in
(continued...)

Court may not entertain the merits of Petitioner's claims because they are procedurally defaulted and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice.  On the other hand, if Petitioner has not procedurally defaulted his claims, then his failure to exhaust is not excused, and this Court must determine whether to dismiss the Petition with prejudice on the merits pursuant to § 2254(b)(2), notwithstanding the failure to exhaust, dismiss the Petition without prejudice as fully unexhausted, or grant a stay and abeyance while Petitioner returns to state courts to exhaust his federal claims.

B.  Procedural Default

Under § 2254(b)(1)(B)(i), exhaustion is not required when there is "an absence of available State corrective process."  28 U.S.C. § 2254(b)(1)(B)(i); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  Coleman v. Thompson, 501 U.S. 722, 732 (1991).  A petition containing claims which are unexhausted but procedurally barred will not be dismissed without prejudice as unexhausted.  "Although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted."  Toulson, 987 F.2d at 987; accord Coleman, 501 U.S. at 730-32 & n.1; Harris v. Reed, 489 U.S. 255 (1989).  "If a claim has not been fairly presented to

---

⁵(...continued)
state court would be futile.'"  Lambert, 134 F.3d at 516 (quoting Christy v. Horn, 115 F.3d 201, 207 (3d Cir. 1997)); see also Gibson, 805 F.2d at 138.  Petitioner's failure to exhaust is not excused under this provision because New Jersey's appellate review procedures are not inadequate to adjudicate his federal claims.

the state courts but state law clearly forecloses review . . . exhaustion is excused." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (citations omitted).

In determining whether state court review is "available" under § 2254(b)(1)(B) and 2254(c), this Court must "turn [its] attention to the actuality that the state courts would refuse to entertain" the petitioner's federal claims. Lambert, 134 F.3d at 516; Christy, 115 F.3d at 207. Most importantly, "unless a state court decision exists indicating that a habeas petitioner is clearly precluded from state court relief, the federal habeas claim should be dismissed for nonexhaustion, even if it appears unlikely that the state will address the merits of the petitioner's claim." Lambert, 134 F.3d at 517.[6]

While it excuses exhaustion, the doctrine of procedural default is a double-edged sword. When a petitioner's failure has prevented the state courts from reaching the merits of his federal claims, federal habeas review of those claims is ordinarily barred as petitioner has procedurally defaulted his claims. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Reliance on an "adequate and independent finding of procedural default will bar federal habeas review of [that] federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (citations and

---

[6] Compare Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993) (reversing and remanding with instructions to dismiss the petition without prejudice for failure to exhaust "[b]ecause no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default") with Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999) (where New Jersey courts had refused to consider petitioner's federal claims because they were procedurally barred by New Jersey Court Rule 3:22-4, exhaustion was unavailable and federal review of claims was barred because petitioner had procedurally defaulted the claims).

internal quotation marks omitted); <u>see also</u> <u>House v. Bell</u>, 126 S. Ct. at 2068 ("Out of respect for the finality of state-court judgments federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted"); <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (When the merits of a federal claim have not been reviewed by the state courts because the claim is procedurally barred, federal courts "require a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim.  The one exception to that rule . . . is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that [the] failure to review his federal claim will result in a fundamental miscarriage of justice"); <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996) ("the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default").

"A state rule provides an adequate and independent basis for precluding federal review if (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions."  <u>Nara v. Frank</u>, 488 F. 3d 187, 199 (3d Cir. 2007).

As previously stated, to allow federal habeas review of the merits of a procedurally defaulted claim, the petitioner must show cause for the procedural default and prejudice from the asserted error, or demonstrate that failure to consider the federal claims will result in a fundamental miscarriage of justice.  <u>See</u> <u>House v. Bell</u>, 126 S. Ct. at 2076; <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Cabrera v. Barbo</u>, 175 F.3d 307, 312-14 (3d Cir.), <u>cert. denied</u>, 528 U.S.

13

886 (1999).  The cause standard requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the [applicable] procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  "Objective factors that constitute cause include interference by officials that makes compliance with the [ ] procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel."  McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (citation and internal quotation marks omitted); see also Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) (noting that "cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by the state court in complying with the procedural rule, or constitutionally ineffective counsel).  However, a procedural default caused by counsel's tactical decision, ignorance of the law or facts, or inadvertence that is short of constitutional ineffectiveness is binding on the habeas petitioner.  See Murray, 477 U.S. at 485-87.[7]

Prisoners asserting innocence as a gateway to defaulted claims must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt - or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."  House, 126 S. Ct. at 2077; see also Schlup v. Delo, 513 U.S. 298, 327 (1995); Slutzker v. Johnson, 393 F.3d 373, 381 n.7 (3d Cir. 2004).  "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal

---

[7] See also Coleman, 501 U.S. at 753 ("[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error") (citations and internal quotation marks omitted); Murray, 477 U.S. at 485-87 (Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.), cert. denied, 504 U.S. 944 (1992) (failure of the state court to "bend the rules" for a pro se litigant is not cause).

review of defaulted claims.  Yet a petition supported by a convincing <u>Schlup</u> gateway showing

'raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of

the trial without the assurance that that trial was untainted by constitutional error'; hence, 'a

review of the merits of the constitutional claims' is justified."  <u>House</u>, 126 S. Ct. at 2077 (quoting

<u>Schlup</u>, 513 U.S. at 317).

      In this case, the record indicates that no state court has in fact determined that "there is an

absence of available State corrective process" for Petitioner's federal claims.  28 U.S.C. §

2254(b)(1)(B)(i).  Respondents nevertheless argue that Petitioner's claims are procedurally

defaulted, pursuant 28 U.S.C. § 2254(b)(1)(B)(i), because Petitioner cannot now challenge the

2000 and 2001 commitment orders in the New Jersey courts, since he was subsequently released

from detention and recommitted.[8]  If Respondents are correct and Petitioner has procedurally

defaulted his federal claims, then this Court may not consider the merits of those claims and must

dismiss the Petition, as Petitioner has not established cause and prejudice or a fundamental

miscarriage of justice.[9]  <u>See</u> <u>Giese v. Blake</u>, 2007 WL 2736266, *2 (E.D. Mo., Sept. 17, 2007)

---

      [8] The Law Division released Petitioner from detention as a sexually violent predator on December 4, 2002.  On February 10, 2003, Petitioner was returned to detention based on alleged violation of the conditions of discharge, and on March 31, 2003, the Law Division recommitted Petitioner as a sexually violent predator.

      [9] Petitioner does not  argue in his Reply or Supplemental Reply that he satisfies the cause and prejudice or miscarriage of justice standard.  Petitioner argues in Grounds Two and Three that counsel was constitutionally ineffective, and the Supreme Court has "acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will" constitute cause to excuse a procedural default.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).  However, "a claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default, " <u>id.</u> at 452 (citation and internal quotation marks omitted), and "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another

(continued...)

(holding that, where committed sexually violent predator procedurally defaulted grounds presented in his § 2254 petition, the alleged ineffectiveness of counsel did not excuse procedural default where petitioner failed to exhaust ineffectiveness claim in state courts); Surrency v. Hadi, 2006 WL 3469534, ** 6-7 (M.D. Fla. Nov. 30, 2006) (holding that because sexually violent predator failed to present his federal claims on appeal from order of civil commitment, claims are procedurally defaulted and barred).

This Court agrees with Respondents that Petitioner has procedurally defaulted his federal claims by failing to include them in his appeal of the commitment orders of May 10, 2000, and March 16, 2001. As subsequent orders have been entered releasing Petitioner from detention and recommitting him, there does not appear to be any presently available state court mechanism for Petitioner to challenge those expired orders, as any ruling on such a challenge would be an advisory opinion. As Petitioner has procedurally defaulted the federal claims presented in his § 2254 Petition, and he  the existence of cause and prejudice or a fundamental miscarriage of justice, this Court will dismiss the Petition.

C.  Colorable Federal Claim

Because no New Jersey court has expressly determined that Petitioner's federal claims are procedurally barred, however, this Court will alternatively determine whether to dismiss Petitioner's claims with prejudice on the merits pursuant to 28 U.S.C. § 2254(b)(2), grant a stay and abeyance while Petitioner returns to state court to exhaust his claims pursuant to Rhines v.

---

[9](...continued)
claim can itself be procedurally defaulted," id. at 453. Because Petitioner's ineffective assistance of counsel claims are procedurally defaulted themselves, they cannot serve as cause for the procedural default of Petitioner's other federal claims.  Id.

Weber, or dismiss the Petition without prejudice as fully unexhausted pursuant to Rose v. Lundy.

Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Third Circuit determined that § 2254(b)(2) codifies the holding in Granberry v. Greer, 481 U.S. 129 (1987), "by conferring upon the district court the authority to deny a habeas petition on the merits despite the petitioner's failure to exhaust state remedies." Lambert, 134 F.3d at 514.

In Granberry, the Court held that where a state failed to raise the exhaustion defense in the district court, the court of appeals may examine the exhaustion issue under the following circumstances:

> The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim . . . . [I]f it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition [on the merits], and the court of appeals affirms the judgment of the district court forthwith.

Granberry, 481 U.S. at 134-135.

Thus, the United States Court of Appeals for the Third Circuit has instructed district courts that they may deny an unexhausted petition on the merits under § 2254(b)(2) only "if it is perfectly clear that the applicant does not raise even a colorable federal claim." Lambert, 134 F.3d at 515 (quoting Granberry, 481 U.S. at 135). Under this standard, "if a question exists as to whether the petitioner has stated a colorable federal claim, the district court may not consider the

merits of the claim if the petitioner has failed to exhaust state remedies and none of the

exceptions set forth in sections 2254(b)(1)(B)(i) and (ii) applies."  Lambert, 134 F.3d at 515.

In this case, Petitioner argues in Ground Two that he was transferred to the Special

Treatment Unit on or about May 16, 2000, pursuant to a Law Division order filed May 10, 2000,

without notice or a pre-transfer hearing.  This Court will consider whether Ground Two states at

least a colorable federal claim.

The SVPA, N.J. Stat. Ann. § 30:4-27.24 et seq., enacted in 1998 and effective August 12,

1999, permits the involuntary civil commitment of a "sexually violent predator" to a separate and

secure facility for control, care and treatment.[10]  The New Jersey Department of Corrections

("NJDOC") is required to notify the Attorney General 90 days prior to the anticipated release of a

prisoner who has been convicted of a statutorily defined sexually violent offense.  N.J. Stat. Ann.

§ 30:4-27.27(a)(1).  When such notice is given, the NJDOC is required to provide the Attorney

General with "all information relevant to a determination of whether the person may be a

sexually violent predator," including psychological and medical records.  N.J. Stat. Ann. § 30:4-

27.27(c).  On its face, the SVPA authorizes the Law Division of the Superior Court of New

---

[10] A "sexually violent predator" is defined as

> a person who has been convicted, adjudicated delinquent or found
> not guilty by reason of insanity for commission of a sexually
> violent offense, or has been charged with a sexually violent offense
> but found to be incompetent to stand trial, and suffers from a
> mental abnormality or personality disorder that makes the person
> likely to engage in acts of sexual violence if not confined in a
> secure facility for control, care and treatment.

N.J. Stat. Ann. § 30:4-27.26.

Jersey to enter an order of involuntary commitment of a prisoner who is scheduled for release, without notice to the prisoner or pre-transfer hearing.  See N.J. Stat. Ann. § 30:4-27.28(c), (f), and (g).  The SVPA does not require a hearing until the person has been involuntarily committed for 20 days as a SVP.  Specifically, the SVPA  provides:  "A person who is involuntarily committed pursuant to . . . this act shall receive a court hearing with respect to the issue of continuing need for involuntary commitment as a sexually violent predator within 20 days from the date of the temporary commitment order."  N.J. Stat. Ann. § 30:4-27.29(a).

Petitioner's claim that his involuntary civil commitment to the Special Treatment Unit upon the expiration of his sentence without notice and a pre-transfer evidentiary hearing violates Due Process has some force.  The Superior Court of New Jersey, Appellate Division, held in In re Commitments of M.G. and D.C., 331 N.J. Super. 365, 383 (App. Div. 2000), that due process requires notice to the person prior to the transfer and an opportunity for him present a written challenge to the documents submitted to the court under N.J. Stat. Ann. § 30:4-27.28, but that Due Process does not require a pre-transfer evidentiary hearing.  Id. at 383-384.   However, the Supreme "Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process may mean that a postdeprivation remedy is constitutionally adequate."  Id. at 128 (citations and internal quotation marks omitted).  Accordingly, the Supreme Court held in Vitek v. Jones, 445 U.S. 480 (1980), that a sentenced prisoner has a liberty interest arising from the Due Process Clause in avoiding involuntary civil commitment to a mental institution during the term of his sentence and that due process requires notice and an evidentiary hearing *before* he is

19

transferred to a mental institution.  <u>Vitek</u>, 445 U.S. at 493-97.[11] As this Court would be hard-

pressed to distinguish <u>Vitek</u>, this Court is not prepared to find that "it is perfectly clear that the

[Petitioner] does not raise even a colorable" Due Process claim based on the failure to provide

---

[11] The Court held in <u>Vitek</u> that "[a] criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections."  <u>Vitek</u>, 445 U.S. at 493-494.  The Court then determined that the following due process requirements, which were ordered by the district court, satisfy the minimum requirements of due process, with the exception of the right to counsel.  <u>Id.</u> at 494-497.

> [T]he State was required to observe the following minimum
> procedures before transferring a prisoner to a mental hospital:
>
> A. Written notice to the prisoner that a transfer to a mental hospital
> is being considered;
>
> B. A hearing, sufficiently after the notice to permit the prisoner to
> prepare, at which disclosure to the prisoner is made of the evidence
> being relied upon for the transfer and at which an opportunity to be
> heard in person and to present documentary evidence is given;
>
> C. An opportunity at the hearing to present testimony of witnesses
> by the defense and to confront and cross-examine witnesses called
> by the state, except upon a finding, not arbitrarily made, of good
> cause for not permitting such presentation, confrontation, or
> cross-examination;
>
> D. An independent decisionmaker;
>
> E. A written statement by the factfinder as to the evidence relied on
> and the reasons for transferring the inmate;
>
> F. Availability of legal counsel, furnished by the state, if the inmate
> is financially unable to furnish his own; and
>
> G. Effective and timely notice of all the foregoing rights.

<u>Vitek</u>, 445 U.S. at 494-495 (quoting 437 F. Supp., at 575).

notice and a pre-transfer evidentiary hearing.  Lambert, 134 F.3d at 515 (quoting Granberry, 481

U.S. at 135).  Thus, this Court declines to deny the Petition on the merits pursuant to §

2254(b)(2).

D.  Stay and Abeyance

In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court confronted "the problem of

a 'mixed petition for habeas corpus relief in which a state prisoner presents a federal court with a

single petition containing some claims that have been exhausted in the state courts and some that

have not."  Id. at 271.  In Rhines, the petitioner had more than 11 months left before the

expiration of the limitations period when he filed his § 2254 petition in the district court, but the

district court did not dismiss the mixed petition as unexhausted until the one-year statute of

limitations had expired.  See Rhines, 544 U.S. at 272.  The district court granted Rhines' motion

for a stay, but the Eighth Circuit reversed on the ground that a district court has no authority to

stay a mixed petition absent truly exceptional circumstances.  Id. at 273.  In reversing the court of

appeals, the Supreme Court noted that the enactment of AEDPA in 1996 dramatically altered the

landscape for federal habeas corpus petitions.  See Rhines, 544 U.S. at 274.  The Court

explained:

> AEDPA preserved *Lundy's* total exhaustion requirement, see 28
> U.S.C. § 2254(b)(1)(A) . . . , but it also imposed a 1-year statute of
> limitations on the filing of federal petitions, § 2244(d).  Although
> the limitations period is tolled during the pendency of a "properly
> filed application for State post-conviction or other collateral
> review," § 2244(d)(2), the filing of a petition for habeas corpus in
> federal court does not toll the statute of limitations, *Duncan, supra*,
> at 181-182, 121 S. Ct. 2120.
>
> As a result of the interplay between AEDPA's 1-year statute of
> limitations and *Lundy's* dismissal requirement, petitioners who

> come to federal court with "mixed" petitions run the risk of forever
> losing their opportunity for any federal review of their unexhausted
> claims.  If a petitioner files a timely but mixed petition in federal
> district court, and the district court dismisses it under *Lundy* after
> the limitations period has expired, this will likely mean the
> termination of any federal review . . . .  [I]f a district court
> dismisses a mixed petition close to the end of the 1-year period, the
> petitioner's chances of exhausting his claims in state court and
> refiling his petition in federal court before the limitations period
> runs are slim.  The problem is not limited to petitioners who file
> close to the AEDPA deadline.  Even a petitioner who files early
> will have no way of controlling when the district court will resolve
> the question of exhaustion.  Thus, whether a petitioner ever
> receives federal review of his claims may turn on which district
> court happens to hear his case.

Rhines, 544 U.S. at 274-75.

The Supreme Court held that "a federal district court has discretion to stay the mixed

petition to allow the petitioner to present his unexhausted claims to the state court in the first

instance, and then to return to federal court for review of his perfected petition."  Rhines, 544

U.S. at 271.  However, the Supreme Court cautioned that "stay and abeyance should be available

only in limited circumstances" because staying a petition frustrates the AEDPA's goals of

encouraging finality and streamlining federal habeas proceedings.  Rhines, 544 U.S. at 277.

"Because granting a stay effectively excuses a petitioner's failure to present his claims first to the

state courts, stay and abeyance is only appropriate when the district court determines there was

good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if

a petitioner had good cause for that failure, the district court would abuse its discretion if it were

to grant him a stay when his unexhausted claims are plainly meritless."  Id.

In this case, the Petition is not a mixed petition, as none of Petitioner's claims are

exhausted, and the holding of Rhines is not directly applicable.  Moreover, even if Rhines applies

to a fully unexhausted petition, this Court declines to grant a stay.  This Court cited <u>Rhines</u> in the December 19, 2006, Order directing a supplemental answer and permitting a supplemental reply, and directed the parties to address whether a stay is warranted pursuant to <u>Rhines</u>.  Although Petitioner filed a Supplemental Reply, he did not explain why he failed to exhaust his federal claims before the New Jersey courts.  As Petitioner does not have good cause for his failure to exhaust his claims in the state courts, this Court declines to grant a stay pursuant to <u>Rhines</u>.

E.  Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), the United States Supreme Court held:  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u>  The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the Petition because Petitioner's claims are either fully unexhausted or procedurally defaulted is correct.

### III.  CONCLUSION

he Court dismisses the Petition and denies a certificate of appealability.


s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**

DATED:  __October 9___, 2007